Thank you, Your Honor. George Carpinello Boyd, Shiller & Flexner. Your Honor, I wish to reserve five minutes of my time for rebuttal, please. Your Honors, this case is determined by three fundamental issues. First, in Radcliffe 1, this court held that the conflict in this case was an attorney-created conflict. It was not a conflict that was inherent in the nature of class actions. It was a conflict that was created by the intentional conduct of the settling plaintiff's counsel by creating an incentive award, not only in creating an incentive award that was conditional, but then bludgeoning the white plaintiffs in an attempt to coerce them to agree to the settlement that they did not agree to. That's law of the case. Number two, California law governs this matter. California law requires disqualification of the settling counsel. That's black letter law. That case law was cited in Radcliffe, Rodriguez 1, Rodriguez 2, and a whole series of cases. In fact, there is not a single case where an attorney creates a conflict that violates 3-310 that he can remain in the case and not be disqualified. The only exceptions are where it's a totally inadvertent creation and where the counsel immediately eliminates it, or where, for example, two corporations emerge, thereby creating a technical conflict. They can cite not a single case in which they can show that the conflict that's created here can continue and they can cause this conflict and remain in the case. And number three, the district court acknowledged all this law but said, I don't have to follow it because, first, this was a technical violation. Radcliffe 1 clearly says it was not a technical violation. And number two, the trial court said these settling counsel were, in effect, innocent, pure of heart. This was inadvertent. So counsel, is it your contention that Radcliffe 1 decides this case? Radcliffe 1 clearly decides this case. That would be Judge Haddon's decision. Well, certainly Judge Haddon's decision. I was only joined by one judge. I didn't see that two other judges joined. But if you just had one more vote, then you might be home free here. Well, frankly, Your Honor, the issue of disqualification was not before the court. Then it wasn't decided in Radcliffe 1, was it? I think the findings of Radcliffe dictate disqualification. I think my question was whether Radcliffe 1 itself dictates the result in this case. I think the findings dictate the result. I don't think the holding does, because the holding that was technically before the court was, the only issue that was before the court was the district court had certified a settlement, certified a class, and had appointed them as class counsel. And all of that was reversed because of and only because of this conflict. So we have the holding in Radcliffe 1, but Judge Carter says, well, this was inadvertent. First of all, it doesn't matter whether the attorney is pure of heart or innocent. If the attorney causes a conflict, that is, we don't have a technical conflict like an Agent Orange or Lazy Oil, but a conflict created by counsel, California is clear. You must be disqualified. But more importantly, they were not pure of heart. It was not inadvertent. It was entirely intentional. In fact, the court in Radcliffe 1 made the factual findings. They made the finding that not only did they intentionally write it into the settlement agreement, but they used it. They used it by going to the white plaintiffs and saying, you will lose your $5,000 if you do not agree to the settlement. And when that wasn't affected, one of the attorneys actually got on the phone to one of the white plaintiffs and said, I hate to see you lose your $5,000. You're going to lose your $5,000 if you don't agree to the settlement. Now, whether they thought that was right or wrong or legal or illegal doesn't matter. But I think as experienced class counsel, they had to know that that was patently improper conduct, and they were disqualified under California law. That's the end of the case. That really dictates what should happen. Now, the California law, as I say, is unequivocally clear. The settling counsel seek to get shelter under the Agent Orange and Lazy Oil, COOLAR line of cases. All those cases have one thing in common. That is, there's an inherent problem between the nature of class actions and rules that were written outside of the class action context. Agent Orange, for example, people they represent as class representatives are now objectors. And the court said, well, that in a normal context would be a conflict. It's not a conflict here because of the nature of class actions. So we don't apply the rule reflexively. And that's the same as Lazy Oil is exactly the same. And this COOLAR is exactly the same. None of those cases are this case. Why do we know that? Because in Rodriguez this court said. This court specifically addressed the Agent Orange line of cases in Rodriguez, which dealt with an illegal conditional incentive award, and said that's not this case. We read Agent Orange. That's not this case. This case is different because the lawyers created a conflict. This wasn't an inevitable conflict. This was a conflict the lawyers knowingly created and put into the case. They are no longer adequate counsel. Rodriguez is on all fours with this case. Again, they created the incentive award. And incidentally, they created the incentive award, as Judge Haddon found, for one reason. Because the white plaintiffs stood in the way of their getting a settlement and tens of millions of dollars in fees. And the white plaintiffs who are class representatives said this is not a good settlement. So they were desperate to convince the white plaintiffs to go along. It's all about the fees. I think it is all about. At the end of the day, it's all about the money. And interestingly, Leaf Cabrasier, which was one of the lead firms, which was brought in by Wolf and Jantica, were left with no clients. They wanted to stay in as class counsel. They had no clients. Every single one of the white plaintiffs to a person said not only did they say we don't approve this settlement. They wrote a letter saying we demand you to stop representing us and representing that there's a settlement here. Because we are your clients and we have objected to this settlement. So when they got the letters, what did the settling counsel do? Well, let me go back to the beginning. One day after settlement, February 5th, day one, settling counsel write a letter to the white plaintiffs saying we have a great deal. I know that Jantica and Wolf oppose it, but this is a great deal and you're going to get $5,000. March 23, they write a letter to Wolf and Jantica and they say your people continue to oppose this. They can be replaced. If they continue to oppose this without hearing all the arguments, they can be replaced. We can get other class representatives. On April 9th, the white plaintiffs write their letter and they say we oppose this. We don't agree with this settlement. So then there's a meeting on April 16th at which settling counsel sit down with the white plaintiffs and say not only is this a good settlement, but you're going to get $5,000 and we can't see any way for you to get $5,000 if you don't agree to this settlement. But then they don't stop there. Seven days later, Mr. Toopes of the settling class picks up the phone and calls Mr. Lovell and says we would hate to see you lose your $5,000 if you do not settle the case. If I may read from the record. On April 23, Michael Toopes called me to ask me if I would change my mind about this settlement. I replied that I could not support this settlement the way it is now. He said he did not want me to, quote, jeopardize the $5,000 I would receive if this settlement was approved, close quote. He further stated that if I do not change my mind, quote, my name would be taken off as a principal, close quote, and I would, quote, be entitled, would not be entitled to anything. He said only three people were against the settlement out of the 12 plaintiffs. That was the conversation. That conversation took place. That was not rebutted. You take the view this conduct was egregious, correct? Not yes, I do. Okay. Okay. But you also take the view that even if the conduct had not been egregious, but the conflict were attorney created, that the trial court was obligated to grant the motion for disqualification, true? Correct. So then the egregiousness of it really, I mean, if we get to egregious, aren't we at balancing of interests? That's my question. I agree, Your Honor. And as I said in the beginning, the case law is clear that it doesn't matter whether they're pure of heart or they had the improper motive that they did. I raise the egregiousness because we have this inexplicable discussion by Judge Carter in his opinion where he goes on to make several purported findings where he says there was no breach of the duty of loyalty. He says this was inadvertent. They were pure of heart. He says, he says. But you're not arguing before us that he improperly applied a balance of interest test. You're arguing that he applied the wrong test. Absolutely. This was a per se. So he may have been right in his factual findings on this point and he may have been wrong. But that issue is not before us today. I totally agree. But if by any glimmer of chance this court would adopt the logic of Judge Carter. Judge Carter, incidentally, says California law governs, no dispute. California law requires disqualification, no dispute. If this were a class action, they would be disqualified automatically, no dispute. But, but, in California where there's a class action and there's a conflict, there's a balancing test. Wrong. This is wrong as a matter of law. He's wrong. And the cases, he doesn't, all the cases he cites, none of them are 3-310 cases. He cites cases where there are other violations of the duty of ethics. And he cites cases like Agent Orange and Lazy Oil, which say where application of the conflict rules to class actions creates an inevitable conflict. We're more, we're much more flexible. And again, that's not this case. So, yes, I agree with you, Your Honor. Wrong test. And the egregiousness of the conduct is irrelevant. But even if he were to say, well, we should use a balancing test, the evidence, the evidence is undisputed. It was an intentional act on their part to bribe, and I use the word advisedly, to bribe the white plaintiffs, to coerce them into agreeing to the settlement. Now, I see that my time's, I think I'm into my rebuttal. So I will sit down, Your Honor. Thank you, Mr. Carbonello. Mr. Bland? If it pleases the Court, I'm Paul Bland with Public Justice. I'm here with my co-counsel Cynthia Chapman of Caddell Chapman and Michael Sobel of Leith Cabraser. First of all, the idea that there's no case that, in which there's bad conduct by class action lawyers, where there's a clear contact, where the court applied a balancing test, is completely untrue. There's a case that's in our brief. We didn't make as much of it as I think we should have, looking back and rereading it. But if you look at the Linney v. Cellular, Alaska case, this court held that even where there is clear conflict of interest by class counsel that is intentional, that that in a class action, which is a very serious conflict, that there is no per se disqualification rule. But instead, the case should go to the trial court for discretionary findings. Now, in that case, what happened was two class action lawyers bring a case at the outset against a cell phone company, and they enter into a proposed settlement pretty much at the same time that they filed the complaint. At the same time, they entered into an agreement whereby they were going to monitor how the settlement worked, and they were going to be paid by the defendant. So they were agents, paid agents of the defendant in that case. And so they reached the settlement, submitted it to the district court, and the district court struck down the settlement, said there was a clear, intentional conflict of interest. It's very serious. Then new counsel were brought in, but those counsel continued on and were treated as class counsel by the court in its final order in the case. And a second settlement was reached. It was better. So two new firms joined. One of them was, in fact, my co-counselor, Leif Cabraser. The objectors came in and attempted to block the second settlement. And they argued that the original counsel tainted the whole action and that they had to be disqualified. And the district court rejected that claim. They found that the conflict, while serious, was not disabling, and it was not lasting because it had been cured by the rejection of the original settlement. This court affirmed the district court, and this court said in language that clearly just governs this case, there is no per se rule that the continued participation by previous class counsel, whose conflict of interest led the court previously to deny class certification, constitutes inadequate representation under Rule 23A. Now, one of the things that... Is that a California case? It's a Ninth Circuit case, Your Honor. Well, yes. It's not a California.  I'm not sure, Your Honor. It's a cellular Alaska partnership, so it's possible it's from Alaska. I would suggest, Your Honor, that to the extent that there is a conflict between California ethics rules and Rule 23, that Rule 23 would actually govern. I think that there's a series of cases that have found that. The Rand v. Monsanto is the first case like that. But there are several other cases that we've cited in our briefs, and Judge Carter cited it. Also, in the Rodriguez II opinion, this court noted that even if California law governs with respect to what is or is not a conflict, that what sanctions result from that are a matter of federal law, and that was in Rodriguez II. And the reason is, is that if what California law was going to do was to be such a blunt instrument, that California law would require automatic disqualification even where it was harmful to the class, it would run counter to the basic principle behind Rule 23, which is that you're supposed to try and be protecting the interests of the class members. And so, for example, in this case, Judge Carter made a series of factual findings based upon numerous observations of counsel that go back to the year 2005, where there have been dozens of hearings in front of the court, the court has an enormous amount of evidence in front of it, and the court specifically found that if you were to automatically disqualify the settling counsel here, that that would seriously compromise the interests of the class, that that would be bad for the class. There's a series of factual findings which deserve this court's deference and respect, and so if what California law were to do were to be to impose an automatic disqualification rule that would actually be harmful to the class's interests, that's what cases like Lazy Oil and so forth are about. The idea that Rule 23, since the principal idea is to protect the class, that having a state ethics rule that's so formulistic that it doesn't take into account the special qualities of class actions is harmful. And the Randolph versus Monsanto was the first case like that, but there's a series, there's maybe six or seven federal, I think from four different circuits that have found that. But also, in Linney itself, this court rejected a per se disqualification rule, and it was talking about it in terms of citing class action principles and looking at Rule 23A, an adequacy representation requirement. It's also important to note that this court found, in that case, that the addition of new counsel cured the conflict. So in this case, you now have the addition of my firm, a new public interest firm, and then Francis and Mailman, which is one of the two most respected and most successful Fair Credit Reporting Act firms in America. So to the extent that the Linney case said that addition of new counsel can cure that, you have new counsel here. Also, Mr. Toopes, who's just been defamed repeatedly, is withdrawn from the case and is no longer part of the team since the remand in this case. Moreover, this court specifically found that not disqualifying the counsel, that letting the earlier counsel who had the conflict, where they'd actually had a deal with the defendant, remain in the case, had been valuable for the class. It advanced the class interest. I quote from the decision, The continued involvement of previous counsel can be highly beneficial to the class. And the court looked at this from an abuse of discretion standard from the district court. So in looking at what the district court had done in the Linney case, this court didn't step back and look at it anew. My colleague here across the aisle wants this court to make a series of factual findings. Now, this is an issue that was debated in front of and a great deal of evidence was put after the remand in Radcliffe 1 because this court did not send it back to the district court with orders to reverse. In Radcliffe 1, the issue of disqualification was raised. If you look at the white objector's brief on page 32 and 33, they argue that the sanction for the ethical violations they identify was per se or automatic disqualification. And they argued for disqualification in the oral argument. So if you look at page 13 of the transcript of the oral argument, a question, I think, from Judge Gould, Can settling counsel remove the provision and start over again? And counsel Mr. Carpinello said no. Counsel are conflicted. They are out of the case. They are gone. So this court heard an argument. Your opponent said that Radcliffe 1, the findings of Radcliffe 1 compelled the result here. I take it you're arguing that actually the result compelled the finding that there is no per se disqualification rule because if we had been prepared to find that before, we would have said so. Yes, exactly. Because if this court was going to have agreed that there should have been automatic disqualification, then the instructions that they gave Judge Carter on remand don't make very much sense and weren't terribly fair to the district court because this court ordered on remand for Judge Carter to look at such issues as when did the conflict arise, when did the conflict end, what were some of the other factors that go to it. All of those are the sorts of factors that you apply not when you have a per se rule or an automatic disqualification, but instead when you're going to be applying a balancing test. So on remand, first Judge Carter had everyone come together and had an extensive hearing in which he set out what the court's concerns were and what issues he wanted briefed. Then both parties came in with extensive additional factual evidence. There were a raft of additional declarations. Then there was a full all-day hearing in which the court listened to discussion going back and forth. Now, to the extent that what counsel wants to do is to try and get around these factual findings, first they've attacked the district court's integrity. If you look at the last page of their reply brief, they said that the district court's decision is just so clearly wrong it raises the question of whether Judge Carter was partisan. And the only grounds for accusing the district court's integrity is essentially that he disagreed with them and ruled against them. I mean, there's nothing that the district court did that they point to other than rule against them to attack his integrity. But if this court's going to respect the district court's fact-finding about something such as motive, something such as intent, which are classic issues of fact that are appropriate for the district court and that deserve respect, and in Rodriguez 2, this court in setting out the standard of review specifically said that the only way in which a district court should be found to have violated the standard of review is if its findings are implausible or they are not justified at all by the record, that Radcliffe 1 really sent this back to the district court with an order to remand, with an order to look at these issues. Well, this is the obverse of the question I was asking your opponent, and that is then even if we uphold all the district court's findings regarding motive and so forth, if there's a per se disqualification rule, you lose, right? That's right. So that's really, at least speaking as one panel member, that's all I care about, really. Is that the right rule? Okay. So then if I can pop back to the Linney case for a second because this court specifically said there is no per se disqualification even where you had a conflict that was dramatically more profound and more serious than the conflict that was at issue here. There were a couple of other arguments that were made by counsel. I want to make sure, since I'm not going to get another rebuttal, I want to fully defend the Linney case if I can because I do think it governs this case. I think if this court were to find that there was an automatic disqualification rule and that's what you all felt what you would need to do would be to certify it to the full Ninth Circuit for en banc treatment because you would essentially be overturning the Linney case which says there's no per se disqualification. Assuming it was a California case. And assuming that California law is not preempted by California law. Today we're not in a position to make a rule for the circuit. We're required to guess what we think the highest court of California would do if presented with the opportunity, right? No, Your Honor, I strongly disagree. I think that in this area there are a series of cases that have found that Rule 23 would preempt and override a rule of state ethics law that is – and Lazy Oil goes to this, Rain Ron Santo goes to this. There's a series of federal circuit cases that we've cited and also that the district court cited. And also, in Rodriguez 2, this court said that while the standard for what violates California law is California law. Excuse me, the standard for what violates ethics law would be a California law. What sanction, what action is taken as a result of that is an issue of federal law. That's the law of Rodriguez 2. It's absolutely a clear statement of this. This issue is – whether this is Alaska, California, or any other state in the circuit, the issue before this court is there automatic disqualification where there is a conflict is an issue of federal law. Well, I'm not sure we have to go that far. Is – the California rule doesn't speak to class action specifically. Yes, and actually we cited a raft of cases. Now, I admit that in most of these cases it's dictative. The answer is that it does not. No, you're right, Your Honor. I'm sorry, yes. Okay. And I wanted to ask you, to what extent then did the district court – I'm having trouble laying my fingers on the district court's explanation, but to what extent do you understand the district court to have been considering particular factors relating to Rule 23 and federal class action practices? So the district court set out essentially the same analysis I'm trying to follow. It said that the rule of what constitutes a conflict is California law, but the rule of what you do as a result of it is a rule of federal law. I believe you cited the Rodriguez II language that I just tried to quote too. And then he looked at Rule 23 factors in terms of what's best for the class, and the district court did follow through that. But the district court also made a series of findings that there was not action in bad faith. He made a finding that it would be very harmful to the class's interest to disqualify the settling council, that the settling council provided greater experience with class actions, with the Fair Credit Reporting Act, and also were less unreasonable, less inflexible. So there were a series of factual findings that they are stuck with that clearly set out that it's in the class's interest. The only question is California law sort of override the class's interest because they have a flat rule. And if that were true, then the Linney case should have come out the other way. Now, one of the things that the white objectors have said about Linney is they said, well, the court didn't actually name the former council who had been conflicted as class council. Well, the Linney case is from 1998, so Rule 23G had not yet been adopted. So most district courts weren't actually making declarations, these are class council. That was before the era of that starting. But if you look at the Pacer printout of the final decision in the Linney case, at page 11, the court says, it is clear that the plaintiff class has benefited from representation by able and experienced class action attorneys. The five law firms involved in representing the class, and particularly names the two new class, have extensive experience prosecuting complex civil litigation and class actions. So the district court in Linney did find that all five council, including the two who had the conflict, had been valuable. Then this court went on and found specifically that they had been valuable. So the argument that, oh, well, they weren't class council, they were just sort of a lawn for the ride and looking over people's shoulders, that's not the actual facts of the case. The other thing that white council have said about the Linney case, they said, well, that was an incipient conflict, it wasn't a realized conflict. To the life of me, I cannot understand how that could be. These two council had signed an agreement with the cell phone company in which they were going to be paid by the cell phone company to perform services for them. At the same time, they're representing a class of people suing the cell phone company. So you have a conflict that's dramatically more serious and more profound than you have in this case. And how can that be incipient once they've already signed the conflict and they're already receiving money? So I think that the Linney case is being on point. But I also think if you look at the Rodriguez 2 case, in Rodriguez 2, this court found, now they say the part of Rodriguez 2 where they said that the original council who had the conflict which involved incentive payments, it's just like this, that that was just involved that they were allowed to get paid. That is not what Rodriguez 2 says. The court went beyond that and talked about their handling and conduct of the case. The court said the district court properly determined its rejection of the incentive awards cured any conflict of interest and that council's services thereafter were properly performed and confirmed a benefit on the class. So this court said that it was going to defer to the district court in that case. The conflict of interest between this case and Rodriguez are essentially, are very, very similar except in this case it's actually much milder because in this case the conflict of interest was disclosed at the outset, at the outset to the court, and also the conflict of interest was, came four years into the litigation after an enormous amount had already been achieved on behalf of the class. Mr. Bland, you've consumed all of your time. Unless there are questions from my colleagues you may want to sum up. There is not a per se rule in this circuit according to Linney and then also that was the finding of Rodriguez and Radcliffe 1 wouldn't make sense if there was a per se rule and then all of this stuff about how people supposedly were trying to blackmail people and bully people and bribe people and all this incredibly harsh language is flatly rejected by the district court after the district court reviewed a ton of evidence and for you to second guess those sort of findings and make decisions about people's integrity from a dry record and without anywhere near the evidence Judge Carter had would be quite unfair. Thank you. Thank you, Mr. Bland. Mr. Carpinello, you have time reserved. Yes, Your Honor. First, this is not Linney and don't take my word for it. Look at the Del Campo decision from the Northern District of California which says, which applies, Your Honor, Judge Schroeder, it applies the California rule in the class action context just like Marino. Del Campo says Linney does not stand in the way. The Linney case, he totally distorts what happened in Linney. In Linney there were two individuals, two attorneys, who reached a settlement that had a conflict and the court said this settlement is out the window because they had a conflict. Then what happened is a totally independent law firm came in which happened to be Leaf Cabrasier and they negotiated a new settlement and the argument on appeal was Leaf Cabrasier having come in then consulted with the former disqualified attorneys and the question was, was Leaf Cabrasier itself disqualified because it had consulted with Corsione and Tankey, the two attorneys who had the conflict. And the Ninth Circuit said no, of course not. Leaf Cabrasier as independent is not disqualified because they relied, they used the expertise of the other two attorneys. That's not this case. Del Campo clearly says it's not this case. Secondly, California law does apply. The local rules say that the district court can apply federal law on applying additional sanctions and if you look at 83-3,13, the additional sanctions are disbarment, paying a penalty. Disqualification, the California courts say is a prophylactic rule. It is not a sanction and it does apply. Rodriguez, the issue in Rodriguez was not disqualification. The issue in Rodriguez 1 and 2 was whether they were going to get fees and that's a question of federal law and by the way, the district court said you get no fees as class action. I'm going to give you a small quantum merit award because you did help the class in some small respect. But there's nothing in Rodriguez that says that having committed a conflict that you can stay in the case, that somehow you can purge the conflict. The issue with Rodriguez was when do you get fees and when do you not get fees and that was the issue that the only issue that Radcliffe Court said to Judge Carter was when do these people get fees and when do they not get fees. The court didn't address disqualification, Your Honor, Judge Heigert, because the motion was not in front of it. There was no motion for disqualification in front of the court. The only issue were approval of the class settlement and appointment of these counsel as class counsel. Finally, in Rule 23, this court has said in Kay's Lumber and in Rodriguez too that even the appearance of a conflict, even the appearance disqualifies counsel under 23G and the question I ask, Your Honors, is if you allow these counsel to continue in this case, to basically blue pencil this conflict out and continue in this case, what message are you sending to the bar about the consequences of a conflict you intentionally create causing an inherent conflict between the class representative exercising their independent judgment and their fiduciaries, the class? That's the question. Thank you, Your Honors. Thank you. We thank all counsel for the argument in a very interesting and provocative case. It's an interesting issue and well argued today. With that, the court is adjourned.
judges: Schroeder, Bybee, Tigar